**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

DENNA HENRY,                          )
                                      )
              Plaintiff,              )
                                      )
v.                                    )    Case No. CIV-16-116-RAW-KEW
                                      )
NANCY A. BERRYHILL, Acting            )
Commissioner of Social                )
Security Administration,              )
                                      )
              Defendant.              )

**REPORT AND RECOMMENDATION**

Plaintiff Denna Henry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 36 years old at the time of the ALJ's latest decision. Claimant completed her education through the seventh grade. Claimant has worked in the past as a nurse's aide, cashier, lawn mower, house cleaner, and cleaning a stadium. Claimant originally alleged an inability to work since birth but amended the onset date to October 19, 2011. Claimant alleges that she suffers from limitations resulting from various mental and physical

problems, including bipolar disorder, major depressive disorder, PTSD, social anxiety, seizures, and hepatitis.

### Procedural History

On April 14, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After a hearing in which Claimant did not appear, an Administrative Law Judge ("ALJ") issued an unfavorable decision on June 5, 2012. Thereafter, the decision was reversed by the Appeals Council and remanded with instructions to provide Claimant an opportunity to appear and testify at a hearing, for the application of the appropriate standard for evaluating the materiality of Claimant's substance abuse, and for the assignment to a different ALJ.

On March 18, 2014, ALJ Larry D. Shepherd conducted a hearing with Claimant appearing and testifying in Oklahoma City, Oklahoma. On May 30, 2014, the ALJ issued a second unfavorable decision. On February 3, 2016, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

4

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a full range of medium work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate her treating physician's opinion; (2) failing to perform a proper credibility determination; and (3) reaching an RFC assessment which is not supported by substantial evidence.

## Consideration of Treating Physician's Opinion

In his decision, the ALJ determined Claimant suffered from the severe impairment of bipolar disorder, major depressive disorder, PTSD, generalized anxiety disorder, COPD, sleep apnea, seizure disorder, obesity, intermittent explosive disorder, substance abuse disorder, and Hepatitis C. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform medium work. In so doing, the ALJ determined Claimant could lift/carry 50 pounds occasionally and 25 pounds frequently, could sit for about six hours in an eight hour workday, could stand and walk for about six hours in an eight hour workday, could occasionally climb ramps/stairs, balance stoop kneel, crouch, and crawl, could not climb ladders, ropes, or scaffolds,

should avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation as well as hazards such as unprotected heights and heavy machinery.  The ALJ found Claimant could understand, remember, and carry out simple, routine, and repetitive tasks.  She could respond appropriately to supervisors, co-workers, and usual work situations, but have no contact with the general public.  (Tr. 19).

The ALJ found Claimant had no past relevant work.  (Tr. 20).  After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of office cleaner, day worker, coffee maker, weight scale operator, meter reader, and laborer (except construction), all of which were found to exist in sufficient numbers in both the regional and national economies.  (Tr. 21).  As a result, the ALJ found Claimant was not disabled from October 19, 2011 through the date of the decision.  Id.

Claimant first contends the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Imtiaz Ahmed.  Dr. Ahmed completed a functional capacity questionnaire on October 23, 2013.  He diagnosed Claimant with moderate COPD/emphysema, GERD, obesity, tobacco dependence disorder with a "fair" prognosis.  He limited Claimant to sitting for five hours and standing/walking for four hours in an eight hour workday.  She could occasionally lift/carry less than ten pounds, rarely lift/carry ten pounds and never

lift/carry 50-100 pounds.  Claimant could frequently finger and grasp, rarely handle, and never stoop (bend) or crouch.  Claimant's signs and symptoms were identified by Dr. Ahmed as depression and anxiety.  He estimated Claimant would be absent from work because of her impairments or treatment for them for about three days a month.  (Tr. 694).

The ALJ assigned "no weight" to the opinion.  His basis for doing so was restricted to the statement that "the record does not support the conclusions drawn by Dr. Ahmed."  (Tr. 17).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted).  The
factors reference in that section are:  (1) the length of the
treatment relationship and the frequency of examination; (2) the
nature and extent of the treatment relationship, including the
treatment provided and the kind of examination or testing
performed; (3) the degree to which the physician's opinion is
supported by relevant evidence; (4) consistency between the opinion
and the record as a whole; (5) whether or not the physician is a
specialist in the area upon which an opinion is rendered; and (6)
other factors brought to the ALJ's attention which tend to support
or contradict the opinion.  Id. at 1300-01 (quotation omitted).
After considering these factors, the ALJ must "give good reasons"
for the weight he ultimately assigns the opinion.  20 C.F.R. §
404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th
Cir. 2004)(citations omitted).  Any such findings must be
"sufficiently specific to make clear to any subsequent reviewers
the weight the adjudicator gave to the treating source's medical
opinions and the reason for that weight." Id.  "Finally, if the
ALJ rejects the opinion completely, he must then give specific,
legitimate reasons for doing so."  Watkins, 350 F.3d at 1301
(quotations omitted).

        The ALJ set forth Claimant's mental and physical evaluations

and treatment at length. (Tr. 13-17). The vast majority of this evidence relates to the period prior to Claimant's alleged onset date in October of 2011. Dr. Ahmed's evaluation post-dated the onset date and concentrated on Claimant's pulmonary problems as this constituted his specialty. Claimant was evaluated at the Central Oklahoma Family Medical Center on June 5, 2013. She complained of shortness of breath and seizures. (Tr. 599). At that time, she had not been evaluated by a pulmonologist despite being previously diagnosed with COPD and asthma. Her medication was not enough to treat her conditions and she was referred for a pulmonary evaluation. Id.

A Pulmonary Function Report resulted after testing on August 6, 2013. The testing demonstrated Claimant received a predicted 35% in the FVC evaluation and 27% in the FEV1 testing. (Tr. 616). Dr. Ahmed assessed moderate sleepiness with various activities. (Tr. 617-18). Dr. Ahmed's evaluation also showed Claimant's asthma to be less than controlled. (Tr. 614-15).

While the ALJ was not required to proceed through a formulaic analysis of Dr. Ahmed's assessment in rejecting its restrictions, he was required to provide more specificity in completely rejecting his functional evaluation when evidence exists in the record to suggest more restrictions in Claimant's ability to engage in basic work activities than found in the RFC. On remand, the ALJ shall

specifically consider the later testing performed by Dr. Ahmed set forth the contradictory evidence which justified giving no weight to his assessment upon Claimant's functional abilities.

### Credibility Analysis

The ALJ concluded that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  He expressly based the conclusion on the findings from two consultative examinations which he concluded "revealed essentially normal results" and demonstrated "claimant functions adequately to perform some work."  (Tr. 20).

He specifically noted that Claimant was cooperative, oriented, and answered questions appropriately with the consultative examiner despite being agitated, shook, spoke quickly, and could not sit still.  The ALJ noted Claimant's seizures were under control and that she drove to the hearing despite testifying that she had not driven in about eight years.  Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence.  Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence.  Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

It is somewhat troubling that the ALJ limited his rejection of

Claimant's testimony to the findings of two consultative examiners whose analysis predated the onset date. Claimant, however, directs the Court to references in the medical record concerning primarily her mental and emotional state during examinations - also predating the onset date. While Claimant's arguments do not require reversal on the credibility analysis, the ALJ shall examine the totality of the record and determine whether further findings on credibility should be forthcoming.

Additionally, since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

### RFC Evaluation

Since the ALJ must re-evaluate the weight given to Dr. Ahmed's opinion, the ALJ shall consider the effect of his revised evaluation upon the RFC and make appropriate modifications. Claimant also requests that his Court remand with instructions to award benefits.

This Court declines this invitation in favor of permitting the ALJ an opportunity to properly evaluate the facts and evidence in this case.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of July, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE